IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DONNA K. LISH-BROWN,**

        **Plaintiff,**

vs.                                               No. CIV 07-0417 JB/WDS

**MICHAEL J. ASTRUE, Commissioner**
of the Social Security Administration,

        **Defendant.**

**MAGISTRATE JUDGE'S PROPOSED
FINDINGS AND RECOMMENDED DISPOSITION[1]**

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for benefits. The Court, having considered Plaintiff's Motion [docket #18] and Memorandum Brief [docket #19], Defendant's Response [docket #20], Plaintiff's Reply [docket #21], the administrative record and applicable law, recommends that Plaintiff's Motion be **DENIED,** and that this matter be dismissed with prejudice.

**I. Background**

Plaintiff, who was born on November 10, 1947, worked as an aesthetician, sales vendor and

---

[1] Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

change person at a casino before the onset of her alleged disability. Tr. 382-383. Plaintiff applied for benefits on May 4, 2004. Tr. 364. She alleged that she became disabled on January 1, 2002. Tr. 364. Plaintiff alleged that she was disabled as a result of traumatic brain injury and chronic pain (headaches). Tr. 45, 74. Plaintiff's application was denied at the initial level, Tr. 359, and at the reconsideration level. Tr. 353. Plaintiff appealed by filing a request for a hearing by an administrative law judge ("ALJ") on December 22, 2004.

A hearing was held on September 13, 2005, before ALJ Mark Dawson, who heard testimony from Plaintiff and from a vocational expert. Tr. 378-391. The ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, and he entered a decision finding her not disabled. Tr. 24-25. The Appeals Council denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Commissioner, from which Plaintiff now appeals. Tr. 7-10.

Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This case was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. Section 636(b)(1)(B).

## II.  Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.*

The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of

job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  Tr. 21.  The ALJ found at step two that Plaintiff had the severe impairments of myofascial pain syndrome and personality disorder with cluster "B" traits.  Tr. 21-22.  The ALJ found that the following were not severe impairments: depression and right temporal encephalomalacia.  Tr. 22.  The ALJ found at step three that Plaintiff's impairments were not severe enough to meet or medically equal any of the Listings.  Tr. 22.  At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform a limited range of medium work with moderate limitations in her capacity for appropriate social functioning in the workplace and moderate limitations in her ability to concentrate for significant periods of time without a rest break, and that she was unable to perform work activity requiring constant interaction with members of the general public. Tr. 22-23.  Given the RFC assessment, the ALJ found that Plaintiff could not perform her past relevant work.  Tr. 24.  At step five, the ALJ determined that there are jobs that Plaintiff could perform which exist in significant numbers in the national economy.  Tr. 24-25.

Plaintiff alleges the following errors:  the ALJ's Residual Functional Capacity Assessment is unsupported by substantial evidence; The ALJ failed to develop the record with respect to the claimant's anxiety; The ALJ's Step Two finding that the claimant did not suffer from severe depression is contrary to and unsupported by substantial evidence; The ALJ's Step Five findings are unsupported by substantial evidence due to inconsistency between the Vocational Expert's (VE) testimony and the Dictionary of Occupational Titles.  (DOT)

## IV.  Discussion

**1.  Is the ALJ's RFC Determination Supported by Substantial Evidence?**

Plaintiff first argues that the ALJ's RFC determination was not supported by substantial evidence.  Plaintiff notes that the ALJ found that claimant could perform "a limited range of medium work" but did not identify the functional limitations that limited the range of work, such as restrictions on sitting, standing, reaching, etc.  Second, Plaintiff notes that the ALJ did not cite any specific medical evidence that would support his assertion that the claimant could perform medium exertion work.

The ALJ did not identify any functional limitations because none were found.  It is apparent from reading the ALJ's decision and his questions to the VE at the administrative hearing that he concluded that claimant could physically perform medium level work, but that the range of medium level work that she could perform was limited by her non-exertional psychological impairments, i.e., her personality disorder and difficulty with concentration.  As noted by the ALJ, "(t)he claimant reported that she is able to sit, stand and walk with no difficulty and is able to use her hands for fine and gross manipulations." Tr. 24.  There was evidence that claimant had performed a medium level job. Tr. 75.  The ALJ's hypothetical question to the VE makes it clear that the limitations he was considering for claimant were the non-exertional psychological limitations ultimately included in the RFC. Tr. 389-90.  The non-exertional limitations, not physical limitations, ruled out a return to claimants prior work.  Plaintiff has not directed the Court's attention to any evidence in the record indicating that she could not physically perform medium level work.  Accordingly, this objection is not well taken.

**2.  Did the ALJ Fail to Adequately Develop the Record Regarding Plaintiff's Anxiety.**

Plaintiff next argues that the ALJ failed to adequately develop the record regarding Plaintiff's

5

anxiety.  The burden to prove disability in a social security case is on the claimant.  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997); 20 C.F.R. § 404.1512(a) ("[Y]ou must bring to our attention everything that shows that you are . . . disabled.").  Nevertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is "responsible in every case 'to ensure that an adequate record is developed during the disability hearing, consistent with the issues raised.'" *Hawkins*, 113 F.3d at 1164 (quoting *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)); 20 C.F.R. § 404.944 (requiring the ALJ to "look[] fully into the issues").  Generally, this means that the "ALJ has the duty to . . . obtain[] pertinent, available medical records which come to his attention during the course of the hearing."  *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996).  Moreover, the ALJ's "duty is heightened" when a claimant appears before the ALJ without counsel[2].  *Henrie*, 13 F.3d at 361.

Plaintiff does not make clear in her brief exactly how the ALJ failed to develop the record.  She notes that is within the power of the ALJ to stop the hearing and continue it at a later date if he believes that there is material evidence missing at the hearing.  However, Plaintiff does not identify what material evidence was missing at the hearing, or identify the point in the hearing transcript when the ALJ was supposed to stop the hearing.  The Court cannot identify any medical records that were unavailable to the ALJ.

Plaintiff also notes that an ALJ can order a consultative examination if he deems one necessary.  However, there are four psychological assessments in the record.  Three existed at the time of the hearing before the ALJ.  Tr. 114-118, 119-123, 235-247.  The fourth was received by the Appeals Counsel following the hearing.  Tr. 367-377, 10.  Dr. Polk diagnosed a personality

---

[2]Plaintiff appeared with a non-attorney representative.

disorder with codependent features but found claimant stable enough to participate in employment. Tr. 117. Dr. Meyer noted that claimant reported that she occasionally experienced anxiety attacks, Tr. 121, performed best on tasks that were not timed, Tr. 121, did not have any learning problems that would impair her ability to work, Tr. 121, and diagnosed her with personality disorder with codependent features. Tr. 122. The Psychiatric Review Technique Form, completed by Dr. Chiang, noted that claimant's allegation of brain injury and panic attacks were "substantiated" but found claimant's psychiatric impairment "nonsevere." Dr. Chiang noted mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated, extended duration episodes of decompensation.

Again, Plaintiff does not point to the ambiguity or conflict in the above reports that would have triggered the ALJ's responsibility to order yet another examination. Nor did claimant's testimony at the hearing or the history she provided to other medical care providers conflict significantly with the reports. It is clear that claimant experienced panic attacks but they were infrequent and, in view of Dr. Meyer, at least, symptomatic of, or otherwise part of, the personality disorder ultimately recognized by the ALJ. Dr. Chiang found claimant's anxiety nonsevere, and her psychiatric limitations "mild." However, the ALJ determined that claimant's psychiatric symptoms had a moderate impact on her ability to socially function and on her ability to maintain concentration. Tr. 390.

Dr. Vento issued her report on November 14, 2006, after the hearing before the ALJ. Tr. 367. Dr. Vento administered a psychological test specifically designed to assess anxiety and Plaintiff scored in the "moderate" range. Dr. Vento concluded that claimant:

> "appeared to be suffering from mood and anxiety symptoms consistent with a Major Depressive Disorder and Post Traumatic Stress Disorder diagnosis. She endorsed numerous items on the SCID II suggestive of a Paranoid Personality Disorder

7

diagnosis as well as several Borderline Personality Traits."

Tr. 374. Dr. Vento also "strongly recommended" career exploration. Notably, Dr. Vento recommended jobs that would require limited interpersonal interaction, a lower stress work environment, and work that could be broken down into short manageable pieces, among other suggestions. Tr. 376. The ALJ obviously did not have the benefit of Dr. Vento's report while he prepared his opinion, as Dr. Vento's examination of claimant was conducted after the administrative hearing and after his opinion had been published. However, it is worth noting that Dr. Vento independently endorsed the same limitations found by the ALJ.

Accordingly, the Court finds that the ALJ did not breach his duty to develop the record. Furthermore, the Court finds that there was substantial evidence in the record to support the non-exertional psychological limitations in claimant's RFC. It was not error for the ALJ to not identify anxiety as a separate, additional impairment at step two of the five step process as Plaintiff's anxiety was not severe. Finally, even if the ALJ committed error at step two of the process with regard to anxiety, it was harmless error. Even if the ALJ had found symptoms at step two under §12.06 (anxiety disorders) in addition to the symptoms found under §12.08 (personality disorders), subsection B is identical for §12.06 and §12.08, and, based on the psychological evidence available to the ALJ there was substantial evidence supporting his determination of claimant's functional limitations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005)(holding that reversal is not required "where the ALJ's factually substantiated findings at steps four and five of the evaluation process alleviate any concern that [but for the error] a claimant might have been adjudged disabled at step three").

Plaintiff's argument that the ALJ did not adequately develop the record regarding Plaintiff's anxiety is not well taken.

**3. Did the ALJ Err at Step Two By Finding That Plaintiff's Depression Was Not Severe?**

Plaintiff next argues that the ALJ erred by determining at step two that Plaintiff's depression was not severe. Plaintiff's step-two argument fails as a matter of law. An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant must make only a *de minimis* showing for her claim to advance beyond step two of the analysis. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). Thus, step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring). But a claimant is required to establish, and an ALJ is required to find, only one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007) (rejecting argument that ALJ erred in failing to find an impairment severe at step two where the ALJ found other impairments were severe).

The Commissioner's regulations describing step two state: "If you do not have *a severe* medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . ., we will find that you are not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (emphasis added). The regulations require a claimant to show only "*a* severe" impairment—that is, *one* severe impairment—in order to avoid a denial of benefits at step two. As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Accordingly, the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds, as he did here, that at least one other impairment is severe.

Nor did the disability evaluation process end at step two with regard to depression, the impairment found to be non-severe. At step four, an ALJ must "consider the limiting effects of all

[a claimant's] impairment(s), even those that are not severe, in determining [RFC]." 20 *C.F.R*. 404.1545(e), 416.945(e); see also *Social Security Ruling* 96-8P, 1996 SSR LEXIS 5, 1996 WL 374184, at *5. As noted above, there was substantial evidence in the record that supported the ALJ's finding of a psychiatric impairment that placed moderate limitations on claimants RFC. Plaintiff's argument in this regard is not well taken.

**4. Did the ALJ Commit Error by Relying on VE Testimony That Was Inconsistent With the DOT, or by Not Asking the VE About Conflicts With the DOT?**

Plaintiff alleges that the ALJ failed in his duty to inquire as to any conflicts that may exist between the VE testimony and the DOT. During the administrative hearing the VE identified the following jobs that claimant might perform:

> Day worker. That is a unskilled medium job with an SVP of 2. That DOT is 301.687-014. There are 869,000 jobs in the national economy, 1,520 jobs in New Mexico. Packager, that's an unskilled medium job with an SVP of 2. That DOT is 920.587-018. There are 329,000 in the national economy and 450 jobs in New Mexico. Industrial cleaner, that's an unskilled, medium job with an SVP of 2. That DOT is 381.687-018. There are 3 million jobs in the national economy and 3,000 jobs in New Mexico.

Tr. 390. Plaintiff has not identified any conflicts between her RFC and the information provided in the DOT for the jobs identified by the VE. Plaintiff claims, however, that the mere failure of the ALJ to ask about any such conflicts requires remand, citing SSR 00-4p, which states that the ALJ "will" ask the VE if the evidence provided conflicts with information contained in the DOT. Claimant cites *Haddock v. Apfel,* 196 F. 3d 1084, 1091 (10th Cir. 1999) for the proposition that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony.

However, the 10th Circuit has recently held that where there are no conflicts between the VE's testimony and the DOT's job descriptions, an ALJ's error in not inquiring about potential

conflicts is harmless and does not require remand.  *Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009).  Accordingly, Plaintiff's argument on this point is not well taken.

### V.  Conclusion

The Court recommends that Plaintiff's Motion to Reverse and Remand for a Rehearing [docket #18 ] be **DENIED,** and that this matter be dismissed with prejudice.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**